# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 08-20255 |
| | ) | |
| VINCENT BRITTON, | ) | |
| a/k/a "VINCENT JEFFERSON," | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING THE DEFENDANT'S MOTION TO SUPPRESS

On July 30, 2008, the Defendant Vincent Britton was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (D.E. # 1). Before the Court is Defendant's August 25, 2008 Motion to Suppress all evidence that resulted from the search of Defendant's person and vehicle conducted on September 28, 2007 (D.E. # 14). The United States has responded, and this motion is now ripe for disposition. For the following reasons, the motion is **DENIED**.

### BACKGROUND

On September 28, 2007, Detective J. Knight ("Knight") and Detective D. Arocho ("Arocho") observed the Defendant Britton driving a black, Toyota Camry with a cracked windshield (Resp. to Def.'s Mot. to Suppress 2). As a result, Detecitves Knight and Arocho made a traffic stop pursuant to Memphis Municipal Ordinance (*Id.*).[1] When the Detectives asked

---

[1] According to Memphis, Tenn., Code § 11-32-18 (B): "It is unlawful to operate any motor vehicle in the city upon which the glass of the windshield...is broken, cracked, pitted, discolored, marred or otherwise defective so as to constitute an impairment or obstruction to the vision of the operator."

1

Defendant for his driver's license and proof of insurance, he told them his license had been suspended, and he did not possess proof of insurance (*Id.*). After verifying the suspension of Defendant's license, the Detectives arrested Defendant and began a search of his car, which uncovered a firearm in Defendant's center console (*Id.*). He then was transported to 201 Poplar and advised of his rights (*Id.*). Defendant did not give a statement (*Id.*). Additionally, Defendant's vehicle was towed to a city lot (*Id.*).

## ANALYSIS

I. <u>The Traffic Stop</u>

The Sixth Circuit's Fourth Amendment Jurisprudence on vehicle stops may be summarized as follows:

> Police may make an investigative stop of a vehicle when they have reasonable suspicion of an ongoing crime, whether it be a felony or misdemeanor, including drunk driving in jurisdictions where that is a criminal offense. Police may also make a stop when they have reasonable suspicion of a completed felony, though not of a mere completed misdemeanor.
>
> Next, police may make a stop when they have probable cause to believe a civil traffic violation has occurred, even if the defendant raises a claim that the stop was pretextual. Whether they may also stop a vehicle based on mere reasonable suspicion of a traffic violation is the subject of another conflict in our case law.[2]

In other words "[t]he relevant inquiry is whether the police officer possessed probable cause or reasonable suspicion to believe that a traffic violation occurred, not whether a traffic violation in fact occurred."[3]

---

[2] *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (*quoting Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)).

[3] *United States v. Westmoreland*, 224 Fed. Appx. 470, 472-73 (6th Cir. 2007) (*quoting Sanford*, 476 F.3d at 396).

2

The requisite reasonable suspicion to make a traffic stop exists when a police officer possesses "'articulable facts that criminal activity "may be afoot" even if the officer lacks probable cause.'"[4] Whether reasonable suspicion existed at the time of the traffic stop is "based on the totality of the circumstances known to the officers at the time of the stop."[5] Under this "totality of the circumstances" rubric, officers may "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"[6] Reasonable suspicion must consist of more than an "inchoate and unparticularized suspicion" or a "hunch" that criminal activity is afoot.[7] However, reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."[8]

Whether a police officer possessed probable cause to make a traffic stop may be determined by "'a flexible, commonsense standard that requires that the facts available to the officer would warrant a man of reasonable caution' [to] belie[ve] that a violation has occurred."[9]

---

[4] *United States v. Roberts*, 986 F.3d 1026, 1029 (6th Cir. 1993) (*quoting United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

[5] *Id.* (explaining that "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers" are just some of the "data, [from which] a trained officer draws inferences and makes deductions-inferences and deductions that might well elude an untrained person").

[6] *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (*citing Cortez*, 449 U.S. 411, 417-18 (1981)); *United States v. Roberts*, 986 F.3d at 1029 (*quoting Cortez*, 449 U.S. at 419) (stressing that "'the imperative of recognizing that, when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion'").

[7] *Arvizu*, 534 U.S. at 274 (*citing Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

[8] *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (*citing Sokolow*, 490 U.S. at 7).

[9] *Westmoreland*, 224 Fed. Appx. at 473 (*quoting United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)) (further defining probable cause as "'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion'" (*quoting United States v. Copeland*, 321 F.3d 582, 592 (6th Cir.

Additionally, probable cause is not dependent on the officers subject motivation for conducting a traffic stop as long as the officer possessed probable cause that a traffic violation had occurred.[10]

According to Memphis, Tenn., Code § 11-32-18 (B): "It is unlawful to operate any motor vehicle in the city upon which the glass of the windshield...is broken, cracked, pitted, discolored, marred or otherwise defective so as to constitute an impairment or obstruction to the vision of the operator." In the case at bar the Detectives personally witnessed Defendant drive by them with a cracked windshield, and thus, they possessed probable cause to believe that Defendant in fact had and was continuing to violate Memphis's traffic ordinance regarding cracked windshields.[11] By virtue of Defendant's violation, the Detectives also possessed probable cause to conduct a traffic stop of Defendant's vehicle.[12]

II. The Automobile Search

Pursuant to the bright-line rule announced in *New York v. Belton*, if a police officer possesses probable cause to arrest the occupant of an automobile, the officer may conduct, "as a

---

2003)). Of further note, the Sixth Circuit has stated that "[t]he probable cause standard, moreover, "'is not subject to the vagaries of police departments' policies and procedures concerning the kinds of traffic offenses of which they ordinarily do not take note.'" *Id.* at 474 (*quoting Ferguson*, 8 F.3d at 392).

[10]      *Id.* (*citing Gaddis*, 364 F.3d at 771 n.6).

[11]      *See Sanford*, 476 F.3d at 394 (stating the "police may make a stop when they have probable cause to believe a civil traffic violation has occurred, even if the defendant raises a claim that the stop was pretextual").

[12]      *See id.* Although the question of "whether [the police] may also stop a vehicle based on mere reasonable suspicion of a traffic violation" does not have a definitive answer in Sixth Circuit caselaw, *id.,* because the Court finds the Detectives possessed the requisite probable cause necessary to stop an individual for violation of a civil traffic ordinance, it is unnecessary to determine whether they additionally met (the less stringent) reasonable suspicion standard.

4

contemporaneous incident of that arrest, [a] search [of] the passenger compartment of that automobile."[13]

In *United States v. Kennedy*, a Defendant was stopped by a police officer for violating a local noise ordinance with his car stereo system.[14] After learning the Defendant's driver's license had been suspended, the officer arrested the Defendant and conducted a search of Defendant's person and car.[15] In upholding the validity of the search, the Sixth Circuit stated "this Court [has] authorized the warrantless search of a vehicle where the occupant was arrested for driving with a suspended license."[16]

In *United States v. Hudgins*, police officers stopped a Defendant's vehicle after observing him run a posted stop sign.[17] When the Defendant could not produce a driver's license and subsequently admitted that it had been suspended, the officers placed him under arrest.[18] After handcuffing the Defendant and seating him in the back of the police cruiser, the Defendant, observing the officers heading towards his car, admitted to possession of a loaded pistol.[19] Emphasizing the Supreme Court's holding in *New York v. Belton,* the Sixth Circuit stated "'that

---

[13] *United States v. Kennedy*, 100 F.3d 957, 1996 WL 636048, at *1 (6th Cir. 1996) (*quoting New York v. Belton*, 453 U.S. 454, 460 (1981)).

[14] *Id.*

[15] *Id.*

[16] *Id.* at *2. Furthermore, the Supreme Court has extended *Belton*'s bright-line rule by stating that a search preceding a formal arrest also is valid, as long as the officers conducting the search have probable cause to arrest and arrest occurs quickly after the search is completed. *Id.* (*quoting Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)).

[17] 52 F.3d 115, 116 (6th Cir. 1995).

[18] *Id.*

[19] *Id.*

when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.'"[20]

Indeed the Sixth Circuit has repeatedly stressed that "'[t]he search of an automobile is generally admissible, even if the defendant has already been removed from the automobile to be searched and is under the control of the officer.'"[21] For example in *Hudgins* the Sixth Circuit held:

> Where the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartment falls within the scope of *Belton* and will be upheld as reasonable.
>
> Our decisions have consistently upheld the search of the passenger compartment of an automobile when the officer initiated contact with the defendant while the defendant was still within the automobile later searched....[22]

By Tennessee Code, an individual who drives a vehicle "when the person's privilege to do so is cancelled, suspended or revoked commits a Class B misdemeanor.[23] An individual who commits a Class B misdemeanor is subject to "not greater than six (6) months [in prison] or a fine not to exceed five hundred dollars ($500), or both, unless otherwise provided for by statute."[24] Thus, by virtue of the Tennessee Code, the United States Supreme Court's Fourth Amendment

---

[20] *Hudgins*, 25 F.3d at 118 (*quoting Belton*, 453 U.S. at 101).

[21] *Id.* at 119 (*quoting United States v. White*, 871 F.2d 41, 44 (6th Cir. 1989)).

[22] *Id.*

[23] Tenn. Code Ann. § 55-50-504 (2007).

[24] Tenn. Code. Ann. § 40-35-111 (2007).

Jurisprudence, and Sixth Circuit caselaw, the Detectives did not violate Defendant Britton's Fourth Amendment rights when they uncovered a loaded pistol while conducting a search of Defendant's vehicle as incident to Defendant's valid arrest.[25]

After observing Defendant driving with a cracked windshield, Detectives Knight and Arocho validly stopped Defendant based on probable cause that Defendant was violating a civil traffic ordinance.[26] When Defendant could not produce his driver's license because it was suspended, the Officers properly arrested him.[27] Upon that arrest, the Officers conducted a search of Defendant's car based on the search incident to arrest warrant exception as laid out in *New York v. Belton*.[28] Thus, the exclusionary rule should not be applied to any evidence obtained as a result of Defendant's traffic stop, arrest, and subsequent search.

## **CONCLUSION**

Because Detectives Knight and Arocho possessed probable cause that Defendant had violated a civil traffic ordinance, the subsequent discovery that Defendant's license had been

---

[25] Because the Court finds the search in the case at bar valid as a search incident to arrest, it is unnecessary to determine its validity as an inventory search, although it should be noted that the Sixth Circuit has held that inventory searches following the arrest of the driver of an automobile are valid under the Forth Amendment. For example in *United States v. Harris*, a Memphis police officer conducted an inventory search of the Defendant's car after arresting him for driving with a suspended driver's license. 50 F.3d 11, 1995 WL 111465, at *1 (6th Cir. 1995). In this case the officer conducted what was known as a "first search" before having the vehicle impounded for blocking traffic. *Id.* The search revealed cocain base and a pistol. *Id.* Here the Sixth Circuit held that the first search was a valid inventory. *Id.* Because the Memphis Police Department's Policy and Procedure Manual instructed officers to tow vehicles that are blocking traffic if the owner/operator is unavailable, and once towed inventory searches were standard practice, the officer's inventory before towing was appropriate under the circumstances. *Id.* at *2. Underlying a permissible inventory search is the policy that inventories protect the owner of the vehicle's property and the police from any subsequent claims of lost/stolen property. *Id.* Thus, when police act pursuant to police policy, inventory searches do not violate Fourth Amendment privileges. *Id.*

[26] *See Sanford*, 476 F.3d at 394.

[27] *See* Tenn. Code Ann. §§ 40-35-11, 55-50-504 (2007).

[28] *See Belton*, 453 U.S. at 460; *see also Kennedy*, 1996 WL 636048, at *1; *Hudgins*, 52 F.3d at 116.

suspended, Defendant's arrest, and the search of Defendant's car incident to that arrest, were all proper under the Fourth Amendment, and thus, any evidence resulting from the search of Defendant's car is not subject to the exclusionary rule. Therefore, Defendant's Motion to Suppress is **DENIED**.

    IT IS SO ORDERED.

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            UNITED STATES DISTRICT JUDGE
                                            Date: October 3rd, 2008.